RENDERED: AUGUST 26, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0434-DG

CITY OF VILLA HILLS, KENTUCKY                                  APPELLANT


                        ON REVIEW FROM COURT OF APPEALS
V.                              NO. 2018-CA-809
                    FRANKLIN CIRCUIT COURT NO. 17-CI-00706


KENTUCKY RETIREMENT SYSTEMS                                    APPELLEE


**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**<u>AFFIRMING</u>**

We accepted discretionary review to consider the application of Kentucky Revised Statute (KRS) 61.598, sometimes referred to as the pension-spiking statute.  Kentucky Retirement Systems assessed over $200,000 in actuarial costs to against the City of Villa Hills following the retirement of one of its employees.  The Retirement Systems found that increases in that employee's compensation over the five years preceding his retirement that was "not the direct result of a bona fide promotion or career advancement" and so shifted the added actuarial cost of the retiree's pension benefits to the City.

The City raises four primary objections to the assessment on appeal: (1) the Retirement Systems applied KRS 61.598 in an improperly retroactive manner to compensation paid to the employee before the effective date of the statute; (2) the burden of proof was improperly placed on the City to prove the

existence of a bona fide promotion related to the pay raise; (3) the courts below erroneously concluded the assessment was supported by substantial evidence that the employee did not experience a bona fide promotion; and (4) that KRS 61.598 is unconstitutional for being arbitrary, overbroad, an ex post facto law, and a law violating the Contracts Clause.

The Court of Appeals resolved all the City's issues in favor of the Retirement Systems, and we affirm that decision.

## I. FACTUAL BACKGROUND

Joseph Schutzman was a police officer for the Villa Hills Police Department when he retired on January 31, 2014. Years before, in addition to his police work, Schutzman was an experienced building and code inspector operating under the business name Schutzman Inspection Services. He originally ran this side-business in his free time off-duty. The City was a client of his on a contractual basis.

On November 29, 2010, the mayor of Villa Hills expanded the city's police department to bring in-house the formerly outsourced responsibility of building inspection, code enforcement, and zoning administration. Because of his experience, this inspector role was in some way or another assigned to and fulfilled solely by Schutzman, who would perform these additional functions while continuing under the same rank and title he already held within the police department.[1] On the same day in November 2010, the City of Villa Hill's

_____

[1] For brevity, we will refer to the role of building inspector, code enforcer, etc. as "inspection," "inspection services," or the like. Schutzman's inspection duties

2

city council reviewed and adopted Civil Service Rules for Villa Hills by ordinance and conducted the first reading of pay scales by ordinance. The very next day, the mayor sent an email to the city administrative clerk approving an increase in Schutzman's base pay of $28.35/hour to $38.35/hour. With his overtime-pay rate at the typical 1.5 times base-pay rate, he would earn approximately $57.25/hour while working overtime. Before December 2010, Schutzman had never reported overtime, but he began doing so when he undertook the police department's new inspection functions. He reported his police overtime and his inspection overtime separately.

His gross compensation in the last six fiscal years of employment was as follows:

| Fiscal Year | Gross Compensation | Increase Over the Prior Fiscal Year |
|---|---|---|
| 2008–2009 | $61,277.04 | n/a |
| 2009–2010 | $60, 026.40 | 0% |
| 2010–2011 | $115,252.23 | 92% |
| 2011–2012 | $164,681.55 | 48.89% |
| 2012–2013 | $111,119.20 | 0% |
| 2013–2014 (until Jan. 31) | $27,918.80 | 0% |

In FY 2010–2011 Schutzman's compensation attributable to his inspection

included "building inspection, reviewing, approving, and denying zoning and building permits, inspecting properties under the building code, investigating code violations and complaints, issuing citations for violations, attending and testifying at hearings, conducting follow-up inspections, answering calls from contractors and citizens, reviewing building plans, and inspecting buildings during and after construction."

duties was $48,586.87, and in FY 2011–2012 that amount was $91,675.48. Separate from the added inspection duties, the pay directly attributable to his police work would have been $66,665.67 in FY 2010–2011 and $73,006.07 in FY 2011–2012. His compensation attributable to overtime in FY 2010-2011 was $39,728.59, and $78,809.25 in FY 2011-2012. The changes in gross compensation between these years constitute the "spikes" in question.

In the meantime, the General Assembly sought to address a practice called "pension spiking"—the practice of increasing the pay of an employee in the years immediately leading up to retirement with the effect of increasing the employee's pension benefits in retirement. To limit this practice, the General Assembly passed KRS 61.598, which went into effect on July 1, 2013.

On January 31, 2014, Shutzman retired from the police department. On June 23, 2014, the Retirement Systems assessed $210,893.82 against the City for the increased actuarial costs resulting from Schutzman's compensation increases in FYs 2010–2011 and 2011–2012.

Responding to the assessment, the City filed with the Retirement System a Form 6481 Request for Post-Determination of Bona Fide Promotion or Career Advancement. The Retirement Systems examined the circumstances described by the City, and in its post-determination concluded that the City was responsible for the assessed actuarial costs because the pay increase was not the result of a bona fide promotion or career advancement.

The City requested an administrative hearing to challenge the liability. The Hearing Officer issued an order on March 17, 2015, initially assigning the

4

burden of proof to the Retirement Systems to prove the alleged spike was not a result of a bona fide promotion. Then, on the Retirement Systems's motion, the Hearing Officer placed the burden of proof on the City instead, requiring it to prove by a preponderance of evidence that the alleged spike was a result of a bona fide promotion. A hearing was held on December 7, 2015, and on March 14, 2017, the Hearing Officer issued a recommended order finding the Retirement Systems's assessment proper under KRS 61.598. The City filed exceptions. The Retirement Systems's Board of Trustees adopted the recommended order as its final order with minor modifications.

The City then petitioned for judicial review of the final order. The Franklin Circuit Court reviewed motions and heard oral argument. On May 15, 2018, the court issued an opinion and order in which it held Retirement Systems properly applied KRS 61.598 retroactively, that the burden of proof was properly assigned to the City, and that substantial evidence supported the Systems's spike determination. The City appealed. The Court of Appeals affirmed the circuit court on the same bases.

At every stage of litigation and appeal thus far, the Retirement Systems has prevailed. The City sought discretionary review from this Court, which we granted.

## II. ANALYSIS

To begin with an overview of the applicable law, KRS 61.598 affects the amount of a retiree's monthly benefits and how the costs of such benefits are allocated between the Retirement Systems and a participant employer, like the

5

City.  KRS 61.598 involves a statutory concept called "creditable compensation."  KRS 61.510(13)(a), in pertinent part, defines "creditable compensation" as:

> "[A]ll salary, wages, tips to the extent the tips are reported for income tax purposes, and fees, including payments for compensatory time, paid to the employee as a result of services performed for the employer or for time during which the member is on paid leave, which are includable on the member's federal form W-2 wage and tax statement under the heading "wages, tips, other compensation". . . .

Put simply, creditable compensation refers to an employee's gross income and compensation in a given fiscal year.  To calculate an employee's monthly retirement benefit and allocate any related actuarial costs between the participant employers and the Retirement Systems, the Retirement Systems must look to the last five fiscal years of the retiree's employment and identify increases in creditable compensation exceeding 10% between any of the five fiscal years.  Then, depending on the timing of earnings and the date of the employee's retirement, the actuarial costs of an identified increase over 10% in any one or more of the five fiscal years must be assessed against the employer if the increase is not justified by a "bona fide promotion or career advancement" or otherwise excepted by statute.  Implicit is that, generally, the Retirement Systems will bear the actuarial costs of a compensation increase up to 10% in a given year.

KRS 61.598(2) defines the class of retiring employees for which the Retirement Systems must limit the retiree's pension benefits based on compensation increases in the last five years of his employment that are not a

6

result of a bona fide promotion or career advancement. The legislature selected January 1, 2018, as the subsection's effective date, meaning that only those retiring after this date would be subject to caps on creditable compensation increases exceeding 10% between any of the last five years of employment. Thus, KRS 61.598(2) concerns *the amount of the retiree's monthly benefits*. It does not directly concern the payment of actuarial costs related to those benefit payments.

Accordingly, KRS 61.598(3) applies that very same 10% limit only to that creditable compensation earned by a retiree after July 1, 2017. Significantly, subsection (3) was added by amendment in 2017 to read:

> In order to ensure the prospective application of the limitations on increases in creditable compensation contained in subsection (2) of this section, *only the creditable compensation earned by the retiring employee on or after July 1, 2017, shall be subject to reduction under subsection (2) of this section.* Creditable compensation earned by the retiring employee prior to July 1, 2017, shall not be subject to reduction under subsection (2) of this section.

The emphasized "creditable compensation . . . reduction *under subsection (2)*" refers to that reduction "used to calculate the retiring employee's monthly retirement allowance" under subsection (2).[2] Thus, subsection (3) also simply concerns the calculation of an employee's retirement benefits, evidently amended to provide prospective application of subsection (2) and *limited to that purpose.* Significantly, this prospectively phrased subsection (3) does not expressly refer to and thus does not concern which entity will ultimately pay

---

[2] (emphasis added).

7

the actuarial costs of compensation increases. Because Schutzman earned the creditable compensation in question before July 1, 2017, and having retired in January 2014, the *amount of his retirement benefits* is left untouched. But again, who pays for the increased actuarial costs of his pay increase is what remains the key substantive issue in this case, whether it is the City or the Retirement Systems that bears the costs of Schutzman's increased compensation.

KRS 61.598(5)(a) concerns just that. It reads:

For employees retiring on or after January 1, 2014, *but prior to July 1, 2017,* the last participating employer shall be required to pay for any additional actuarial costs resulting from annual increases in an employee's creditable compensation greater than ten percent (10%) over the employee's last five (5) fiscal years of employment that are not the direct result of a bona fide promotion or career advancement. The cost shall be determined by the retirement systems.

Significantly, the 2017 amendment to KRS 61.589 merely added the language "but prior to July 1, 2017," emphasized above, to the already existing unemphasized portion of subsection (5)(a). Using the same 10%-increase measure, the General Assembly determined that when a pay increase is not the result of a bona fide promotion or career advancement, the last participating employer is assessed the increased actuarial costs resulting from any compensation increases of 10% or more if that employee retired "on or after January 1, 2014, but prior to July 1, 2017. . . ." It also provides that the Retirement Systems will determine what that cost is. Again for clarity, subsections KRS 61.598(2) and (3) determine whether increases over 10% will be enjoyed by a retiree in calculating his monthly benefits, while by contrast,

8

subsection (5) simply allocates the cost of those increases depending on the date of an employee's retirement.

In this case, Schutzman retired on January 31, 2014, just inside the temporal window of applicability of subsection (5). Under the plain language of this statute, the increased actuarial costs identified and determined by the Retirement Systems are to be borne by the City unless it can demonstrate Schutzman's compensation change was justified by a bona fide promotion or career advancement ("bona fide promotion," hereafter in short).

KRS 61.598(1) provides that a "bona fide promotion or career advancement" is:

> [A] professional advancement in substantially the same line of work held by the employee in the four (4) years immediately prior to the final five (5) fiscal years preceding retirement or a change in employment position based on the training, skills, education, or expertise of the employee that imposes a significant change in job duties and responsibilities to clearly justify the increased compensation to the member.

There are two basic ways to find a "bona fide promotion," either (a) in a promotion or professional advancement in substantially the same line of work as the last four years of employment, or (b) a change in employment position based on training, skills, education, or expertise that imposes a significant change in job duties and responsibilities clearly justifying the pay increase.

9

**A. The Retirement Systems properly applied KRS 61.598.**

We engage in deferential review of an administrative agency's decision to deny a benefit to a party carrying the burden of proof or persuasion.[3] Where the burden of proof was properly assigned and the administrative agency found that burden was not sustained, this Court will accept the agency's finding unless the evidence is so overwhelmingly in the burdened party's favor that the Court cannot accept the finding.[4] Where the statute is properly applied and the finding below was supported by substantial evidence, we will affirm.

In this case, KRS 61.598 was properly applied retroactively, the burden of proof was properly placed on the City, and the City simply failed to rebut the Retirement Systems's determination that Schutzman did not receive a bona fide promotion. The Retirement System's determination was supported by substantial evidence, and the record evidence does not compel a contrary determination. We affirm the Court of Appeals on all issues.

### 1. KRS 61.598 applies to creditable compensation paid to an employee before the July 1, 2013, effective date.

The City argues that the retroactive application of KRS 61.598 is improper as a matter of statutory interpretation and application, that the legislature did not intend for the statute to apply retroactively. The City also makes constitutional objections to this retroactive application, which we will settle shortly. We first conclude that KRS 61.598 directs the Retirement Systems to

---

[3] *Ky. Ret. Sys. v. Ashcraft*, 559 S.W.3d 812, 819–20 (Ky. 2018) (citing and adopting the standard in *McManus v. Ky. Ret. Sys.*, 124 S.W.3d 454, 458 (Ky. App. 2003)).

[4] *Id.*

10

apply the statute retroactively in some circumstances, that is, to calculate creditable compensation and assess costs for compensation paid before the statute took effect on July 1, 2013. We review de novo issues of statutory interpretation and application, and in doing so our duty is to effect the intent of the legislature.[5] We affirm the Court of Appeals' holding that retroactive application was proper as a matter of statutory interpretation and application.

"A retrospective law is one which creates and imposes a new duty in respect to transactions or considerations already past."[6] For our purposes, the terms "retroactive" and "retrospective" refer to that part of KRS 61.598 that directs the Retirement Systems to look back over the preceding five years of creditable compensation paid, even that which was already paid to an employee before its effective date in 2013, in calculating possible assessments against the employer for increased actuarial costs.

As previously explained, there are separate provisions under KRS 61.598 for calculating the employee's retirement benefits, governed under subsections (2) and (3), and for calculating possible assessments against employers, under subsection (5). All three subsections were amended in 2017, effective the same year. We may presume at the start that with these amendments the General Assembly considered the statute's contents carefully, inserted clarifying

---

[5] *Commonwealth v. Plowman*, 86 S.W.3d 47,____ (Ky. 2002).
[6] *Peach v. 21 Brands Distillery*, 580 S.W.2d 235, 236 (Ky. App. 1979).

language as it saw fit, and purposely left certain language substantively undisturbed.[7]

The City attempts to capitalize on newly amended language under subsection (3), "In order to ensure the prospective application of the limitations on increases in creditable compensation contained in subsection (2). . .," apparently to argue that the General Assembly intended the entire statute to apply only prospectively. But the language just quoted only applies specifically to subsection (2).

Subsection (5)(a) separately concerns assessments to employers and did not have similar language added "in order to ensure prospective application." Rather, the following emphasized language was inserted into (5)(a), with the rest of the subsection otherwise left substantively untouched: "For employees retiring on or after January 1, 2014 *but prior to July 1, 2017*," increased actuarial costs shall be assessed to the last employer under the situations described. The language is unequivocal. As the Court of Appeals noted, it could not be clearer that for purposes of assessments against employers, the legislature intended this five-year look back, even to reach compensation paid before the 2013 effective date of the statute.

The City also points to a provision allowing employers to seek predeterminations of agency treatment before increasing an employee's compensation. We can dismiss this concern as being without merit, as seeking

---

[7] *Util. Mgmt. Grp., LLC v. Pike Cnty. Fiscal Ct.*, 531 S.W.3d 3, 9 (Ky. 2017).

a predetermination is but an option for an employer by statute, with no meaningful due-process concerns, addressed shortly, between a predetermination and post-determination of agency action. This advisory option does not mandate the statute's application in any particular temporal direction as the City argues.

The City is correct that we adhere to a strong general presumption against retroactive application of statutes absent a clear expression of such intent within the statute, especially where new rights and duties are made to arise from actions already past.[8] But this legislative intent requires no magic words, it need only "manifest [the General Assembly's] desire that a statute apply retroactively."[9]

The five-year lookback pertaining to assessments against employers, effective in some form since its original enactment in 2013, demonstrates the intent of the General Assembly to apply the statute retroactively. The lookback is inherently and clearly retrospective and, therefore, is intended to apply accordingly. While the 2017 amendment clearly abrogated any retrospective interpretation *as to the calculation of a retiring employee's benefits*, the General Assembly evinced a completely different intention for subsection (5)(a) by leaving alone, thereby practically reiterating, the five-year lookback applied to any employer of an employee retiring after January 1, 2014, only adding "January 1, 2017" as the other end of the currently applicable time frame. If

---

[8] *Id.*

[9] *Id.* (citing *Baker v. Fletcher,* 204 S.W.3d 589, 597 (Ky. 2006)).

the General Assembly intended a different application, it would have made that so using language of the same undeniable clarity. As a matter of statutory construction, KRS 61.598 properly applies retroactively according to its plain language. We affirm the Court of Appeals in that regard.

## 2. *It was proper to assign the City the burden of proving a bona fide promotion or career advancement.*

The Hearing Officer placed the burden of proof on the City to affirmatively prove Schutzman's pay increase was a result of a bona fide promotion. The City argues that this burden was improperly placed on it, that it should have been placed on the Retirement Systems. We disagree.

KRS 13B.090(7) reads:

> "In all administrative hearings, the party proposing the agency take action or grant a benefit has the burden to show the propriety of the agency action or entitlement to the benefit sought. The agency has the burden to show the propriety of a penalty imposed or the removal of a benefit previously granted."

The City provides several dictionary definitions to assist the Court in applying this statute to the case at bar. Black's Law Dictionary defines "penalty" as "a sum of money exacted as punishment for either a *wrong* to the state or civil *wrong* (as distinguished from compensation for an injured party's loss)."[10] A "civil penalty" is defined further as "a monetary assessment for a *violation* of a statute or regulation."[11] And "statutory penalty" is defined as one that imposes

---

[10] Black's Law Dictionary 1247 (9thed.) (emphasis added by City).

[11] *Id.* (emphasis added by City).

14

"automatic liability on a wrongdoer for *violation* of a statute's terms *without reference to the actual damages suffered.*"[12]

These definitions only go to show the Retirement Systems's assessment is not a penalty. As the City's own definitions show, a penalty generally involves a forbidden act, like exceeding the speed limit on a public highway, hunting without a license required by law, or failing to conform to a building code, acts amounting to *violations* of law for which fines or citations might be assessed.

It is not alleged that the City has committed any sort of infraction or breach, nor any violation of KRS 61.598 or derivative regulation. The statute is simply a mechanism of shifting the costs of an employment decision to the employer under predetermined formulae. Like a tax, it is not assessed to punish unlawful behavior or wrongdoing, though it perhaps disincentivizes certain actions. Increasing an employee's pay is not forbidden, disallowed, or otherwise unlawful, nor is it deemed wrong. The assessment is simply the price the General Assembly placed on employer-participants in a state pension system who bear a primary responsibility of financially supporting the system.

Nor is the City being deprived of a benefit previously granted by the Retirement Systems. The City was never guaranteed the right to engage in employment actions that place a greater burden on the pension system without paying a part of that cost. In reality, it is the City that is seeking to obtain a

---

[12] *Id.* (emphasis added by City).

15

benefit from the Retirement Systems and other participants, namely that others would pay for the increased actuarial costs of an employee paid enormous amounts of overtime with no corresponding net gain in the services rendered by the employee to the City. To avoid the costs of that employment decision at others' expense would amount to an affirmative benefit to the City-employer. But even dubiously conceptualized as a benefit, it was never granted or guaranteed to the City.

Finally, assigning the burden of proof to the City makes practical sense. The City is in the best position to gather evidence pertaining to an employee or a purported promotion. Under the express language of KRS 13B.090(7), the burden of proof was properly assigned.[13]

### 3. *The evidence does not compel a finding that the employee experienced a bona fide promotion.*

After the Hearing Officer properly assigned the burden of proof and made a post-determination in favor of the Retirement Systems, the Board found the City had not carried its burden of proving a bona fide promotion by a preponderance of the evidence. Whether there was a bona fide promotion is a factual matter found under circumstances generally defined by statute and

---

[13] *Cf. City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n ex rel. Kaelin,* 212 S.W.3d 89 (Ky. 2006) (concerning an employment-status matter, holding the burden of proof was properly placed on the employer fire-department to prove a district chief was an employee and thus entitled to time-and-a-half overtime pay); *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky. 1986) (where a claimant sought disability benefits from the Retirement Systems, held burden of proof was properly assigned to the claimant to prove his disability did not preexist membership in the system or reemployment).

refined by regulations.[14]  We defer to the Hearing Officer's findings adverse to the party bearing the burden of proof.[15]  So long as the application of the statute was proper as a matter of law, we will only reverse the agency's finding if the evidence of record so overwhelmingly favored the City that it compels a contrary conclusion.[16]  "Evidence that would have supported but not compelled a different decision is an inadequate basis for reversal on appeal."[17]

The City argues the absence of substantial evidence to support the Retirement Systems's determination the pay increase was not a result of a bona fide promotion.  It asserts the Retirement Systems based this determination solely on two facts: first, that Schutzman's formal rank and title within the police department did not change in 2010 despite his additional responsibilities within the police department; and, second, that he was already doing practically the same inspection work for the City before the purported promotion.  The City also claims the Retirement Systems improperly refused to consider as evidence of a bona fide promotion the gross pay increase attributable largely to overtime hours.  The City avers all of this was improper "cherry-picking" of the facts on the Hearing Officer's part.  We hear but ultimately reject each of these contentions.  The evidence does not compel the

---

[14] *See* KRS 61.598(1).

[15] *Ky. Ret. Sys. v. Ashcraft*, at 817–18 (citing *Ky. Ret. Sys. v. Brown*, 336 S.W.3d 8, 14 (Ky. 2011)); *Ky. Ret. Sys. v. Wimberly*, 495 S.W.3d 141 (Ky. 2016)).

[16] *See Wilkerson v. Kimball Int'l, Inc.*, 585 S.W.3d 231, 236 (Ky. 2019).

[17] *Gaines Gentry Thoroughbreds/Fayette Farms v. Mandujano*, 366 S.W.3d 456, 461 (Ky. 2012).

conclusion that Schutzman enjoyed a bona fide promotion. We, therefore, affirm the Court of Appeals in all respects on this issue.

The City is correct that the first two facts may not always be per se dispositive of the "bona fide promotion" determination, because promotions and career advancements might take on various forms and manifestations; and the circumstances of each case should be examined, as was done here. Still, even the City must concede that they are factors to consider, and it must understand that there is more to this evidence than meets the eye in light of the other evidence of record. That is, for whatever reason, City officials decided to merge those services Schutzman was already doing off-duty as an independent contractor with his existing duties as a full-time detective while increasing his hourly pay by 35%, not even considering his overtime rate was double his original hourly rate. In this context, the two factors substantially prove there was no "bona fide promotion" of Schutzman.

First, we must reject the City's implied premise that Schutzman's inspector role was in the same line of work as his police work. The inspector role is only tangentially related to the traditional law-enforcement functions Schutzman fulfilled in his role as a police officer. To suppose the inspection role is substantially in the "same line of work" under KRS 61.598(1)(a) is a stretch, perhaps as much as it would be to say that a police officer and a prosecuting attorney, both tasked with law enforcement in some broad sense, are in the same line of work. The code-inspecting, investigation, and citation-writing aspects of Schutzman's inspection role bear a vague similarity to his

18

general law-enforcement role as a police officer, which involves patrolling, investigation, and citation issuance of a different sort. But the inspection role is not what we would call "law enforcement" in the same policing sense. Placing the code-inspector role in the police department strikes us as an odd fit, however justified, especially considering this was a special position for which Schutzman was deemed "uniquely qualified" within the police department, according to witness testimony at the administrative hearing. Under the circumstances we regard the two roles as different lines of work for purposes of determining whether a purported promotion or career advancement is "bona fide."

The City relies more on the second form of "bona fide promotion," characterizing the merger of Schutzman's roles as a municipal employee as a more general change in employment position based on training and skill imposing a significant change in job duties clearly justifying the increased compensation. The Retirement Systems must have found Schutzman's lack of formal promotion and the pre-existence of his inspector services as a contractor for the City significant because Schutzman's purportedly augmented role for the department would reasonably appear to be merely a formal change. The only significant difference between Schutzman's work pre-2010 and post-2010 was the extent and mode of compensation and the benefits he earned from his work for the City in both roles. In a strictly legal sense, before 2010 he was both a city employee as a police officer and an independent contractor working for the city as a code inspector. The only change was that he became

19

an employee in performing both services under the same official umbrella of his peculiarly assigned police-department duties, since he was no longer an independent contractor for the City. His actual service to the City did not fundamentally change. The change of his employment relationship with the City does not compel the finding that the change in position was "bona fide" under KRS 61.598.

Further, the City asserts the Retirement Systems and the lower tribunals interpreted the definition of "bona fide promotion" improperly to exclude overtime pay from consideration in that determination. More directly, this is an objection to the Retirement Systems's regulation, 105 KAR 1:140, Section 7(6), which excludes overtime pay, by definition, from consideration. As applied to this case, the City objects to this lack of consideration, given Schutzman's enormous increase in gross overtime compensation. We find the City's objection lacking.

The statute does not require consideration of overtime pay in determining the existence or authenticity of a promotion. Overtime pay generally is not in and of itself evidence, certainly not conclusive evidence, of a bona fide promotion. Overtime compensation is, just as the term describes, compensation for fulfilling essentially the same job duties in a given role but in a number of hours exceeding, "over," the standard expected time working a job in a given period, typically about 40 hours a week. The employee working overtime may, as here, get paid more per hour, often "time and a half," or 1.5 times the employee's wage. But this extra compensation is based on the

20

*quantity* of work done in a given week, not for a greater *type* or *quality* of work. As a general matter, we read "bona fide promotion or career advancement" to pertain to a change in type, quality, or tier of an employee's responsibility, not a change in the quantity of work performed.

The reviewing circuit court aptly concluded that common sense must not be a stranger in a court of law. Overtime may be excluded from consideration by the Retirement Systems in these determinations because overtime pay is not in any practical sense qualitatively attributable to bona fide job promotions. Further, the Retirement Systems is at liberty to weigh the probative value of such evidence and find it lacking, as overtime will tend to be, and consider it little if any contributing factor to an employer-favorable determination.[18] We affirm the Court of Appeals' holding that the factfinder did not err in disregarding the extent of Schutzman's overtime pay.

At this point, we have no need to inquire deeply into the City officials' decision to arrange Schutzman's official job duties to incur additional retirement benefits and compensation for essentially the same work in an ostensibly new or altered position tailored specifically to Schutzman. We need only accept as supported by substantial evidence under a highly deferential standard that, in substance, Schutzman's pay increase from both overtime and increased retirement benefits was not a result of a bona fide promotion or

---

[18] *Ky. State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972) ("For it must be borne in mind that it is the exclusive province of the administrative trier of fact to pass upon the credibility of witnesses, and the weight of the evidence.").

21

career advancement, that, although his official job duties *as a city employee* of the local police department were augmented in the most diaphanous sense, it was not on account of a true promotion.

So in summary response to the City's arguments concerning the sufficiency of evidence, Schutzman's lack of change of formal title and the congruence of his job responsibilities were not totally dispositive per se, at least not alone. The Retirement Systems's conclusion was reasonable and aimed properly at substance over form, and we are inclined and obligated under the applicable standard of review to accept its substantially evident conclusion that there was no bona fide promotion justifying a 92% increase in FY 2010–2011 and then a 42.5% increase *from that increase* the very next fiscal year. The City cannot seriously contend that a near-net-triple increase in Schutzman's compensation from $60,026.40 to $164,681.55 in two years is "clearly justified" by a formal role change. What the City did in Schutzman's case is its prerogative, but it must bear part of the cost to the extent required by statute.

**B. KRS 61.598 is not arbitrary, capricious, or overbroad in violation of Section 2 of the Kentucky Constitution, either in principle or in application.**

The City asserts KRS 61.598 is unconstitutional as arbitrary and overbroad, and that it has been interpreted and applied by the tribunals below in violation of its due-process rights. The Retirement Systems argues Section 2 of the Kentucky Constitution does not even apply to the City as a government entity, that it is not a "freeman" entitled to security in life, liberty, and property. The Retirement Systems further argues that even if Section 2 did apply to

22

protect the City, no violation occurred because the City was afforded adequate procedural due-process in the administrative and judicial systems, and that it made its decision according to statutory mandate.

KRS 13B.150(2)(a) requires a court to reverse and remand a case if the final order is "[i]n violation of constitutional or statutory provisions[.]" Section 2 of the Kentucky Constitution reads: "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." We have held that Section 2 applies to protect non-persons, such as corporations.[19] As to whether this provision applies to the City as a municipality, we are similarly satisfied that it enjoys certain Section 2 rights against arbitrary deprivation of property or economic interests. But when the courts review an allegedly arbitrary administrative action affecting an economic or property right, the Court simply ensures an alleged deprivation of non-fundamental economic or business rights has a rational basis in furtherance of a legitimate government interest,[20] that the affected party was afforded adequate procedural due process, and that the decision was informed by substantial evidence of record.[21]

---

[19] *Elk Horn Coal Corp. v. Cheyenne Res., Inc.*, 163 S.W.3d 408, 411 (Ky. 2005), *overruled on other grounds by Calloway Cnty. Sheriff's Dept. v. Woodall*, 607 S.W.3d 557 (Ky. 2020).

[20] *Stephens v. State Farm Mut. Auto. Ins. Co.*, 894 S.W.2d 624, 627 (Ky. 1995).

[21] *Kaelin v. City of Louisville*, 643 S.W.2d 590, 591 (Ky. 1982).

*1. The General Assembly's passage and the Retirement System's implementation of KRS 61.598 were supported by a rational basis.*

The General Assembly unquestionably has the authority to establish and pass legislation concerning the administration of retirement pensions for state employees, absent limited exceptions inapplicable in this case. The General Assembly established the Retirement Systems to administer the programs and delegated authority to the Retirement Systems to pass and implement regulations consistent with statute. We have already established that the Systems properly applied the statute as written in this case and that its regulation was consistent with KRS 61.598. The City's qualms are fundamentally directed at the statute, arguing the assessment was arbitrarily applied to the City. It argues the arbitrariness is compounded by what it regards as the previous payment of these actuarial costs via its regular employer contributions and because it made these payments to Schutzman before the bill that became KRS 61.598 even reached the floor of the General Assembly.

In light of alleged historic mismanagement of the general pension fund, funds that were to be held in trust to the employee-members, the General Assembly found it necessary to place upper-limits on pay increases given to member-employees retiring between January 1, 2014, and July 1, 2017. The General Assembly shifted certain costs of such pay increases away from the general retirement funds, contributed to and paid out of by various government employers and employees, and placed those costs on the employers, who have

24

greater direct discretion over employee compensation. This cost-shifting was meant to alleviate the financial distress the pension system was under. Thus, KRS 61.598 is meant to be a bloat-limiting balancing measure.

KRS 61.598 is written to serve that purpose, and it authorizes the Retirement Systems to pass regulations and take certain prescribed actions to assess increased actuarial costs attributable to employee compensation increases. By concentrating part of some larger actuarial costs on the participant-employers, the General Assembly shifted the costs to employers. This statute affects all employers similarly and only under the specified circumstances, and it is reasonably designed to rehabilitate and preserve the Commonwealth's pension system. KRS 61.598 still permits a 10% increase allowance before the Retirement Systems inquires into pension costs at all, and beyond that, an assessment can still be avoided by demonstrating a bona fide promotion. Pension costs are determined by actuarial formulae, which we have no reason to think are being applied arbitrarily, assuming they are premised on factors one would predict such as the life expectancy of participants, the age of the work force, and anticipated contribution needs. Neither the rationale nor the implementation of this statute is arbitrary, random, or speculative, as the City suggests. There is a thread of logic running through this statute supporting a legitimate interest properly under the government's domain. It is not arbitrary, much less capriciously aimed at the City.

The City may object to either the generals or particulars of how the General Assembly addressed the problems in the pension system, and it may

argue it is surprised and finds unfair the amount of money it has been assessed to meet that end. But KRS 61.598 is not arbitrary on its face or as applied.

**2. The City was afforded adequate procedural due process.**

The other aspect of arbitrariness is the procedural due process afforded to the claimant. The City asserts the Retirement Systems's decision was reached without considering evidence of a bona fide promotion, only "by reference to mathematical tables." It has argued that the assessment was made contrary to statutory mandate, that the Retirement Systems improperly assessed the costs of pay increases before it made a factual determination as to changes in Schutzman's official duties, a change that the City asserts amounts to a bona fide promotion. The City thus considers itself deprived of the opportunity properly to challenge the assessment.

Here, there is no doubt the City was afforded and has enjoyed adequate procedural due process. The requisite procedural elements are notice, a hearing, the taking and weighing of evidence, a finding of fact based upon an evaluation of the evidence, and conclusions supported by substantial evidence.[22] The City was first allowed to object to the initial notice of assessment by filing a Form 6481 to initiate reconsideration by the agency, then it was able to appeal the unfavorable determination to the Board of Trustees of the Retirement Systems for review, and it has since been afforded

---

[22] *Kaelin*, 643 S.W.2d 590, 591 (Ky. 1982).

three levels of judicial review. The City was given ample opportunity to put on evidence that Schutzman's 92% and 48.89% raises across two years were the result of a bona fide promotion, yet no tribunal has been convinced. We have already addressed how there was substantial evidence supporting the finding unfavorable to the City. The City was afforded adequate procedural due process.

### 3. *The statute is not overbroad.*

The City merely asserts that KRS 61.598 is overbroad, offering little in the way of explanation. A statute is overbroad when, "in an effort to control impermissible conduct, the statute also prohibits conduct which is constitutionally permissible."[23] "Where conduct and not merely speech is involved, the overbreadth effect of a statute must not only be real, but substantial as well, and judged in relation to the law's plainly legitimate sweep."[24]

The overbreadth doctrine typically applies to intervene where government action unduly burdens or regulates constitutionally protected actions.[25] The decision to raise an employee's compensation is not constitutionally protected, like speech, religion, or interstate travel, and we have already concluded that KRS 61.598 reasonably "regulates" that behavior for a legitimate reason. Even if the assessment amounts to a regulation of protected conduct, we have

---

[23] *Commonwealth v. Ashcraft*, 691 S.W.2d 229, 232 (Ky. App. 1985).

[24] *Hendricks v. Commonwealth*, 865 S.W.2d 332, 337 (Ky. 1993).

[25] *See Commonwealth v. Kash*, 967 S.W.2d 37, 42 (Ky. App. 1997); *Ashcraft*, 691 S.W.2d at 232.

already found this conduct is not prohibited by the statute or otherwise impinged. While no statute is perfectly limited in application, the parameters of KRS 61.598 are reasonably tailored to the purported end. We are not otherwise offered any sound description of how the statute unduly punishes or burdens conduct unrelated to the sustainability of the pension fund. The statute is not overbroad.

## C. KRS 61.598 does not violate Section 19(1) of the Kentucky Constitution prohibition against ex post facto laws or the state or federal Contracts Clauses.

We turn now to the City's constitutional objections to the statute's retroactive effect, namely that KRS 61.598 is an ex post facto law and that it violates the federal and state Contracts Clauses. Section 19(1) of the Kentucky Constitution reads: "No ex post facto law, nor any law impairing the obligation of contracts, shall be enacted."

> An ex post facto law is any law, which *criminalizes* an act that was innocent when done, aggravates or increases the punishment for a *crime* as compared to the punishment when the *crime* was committed, or alters the rules of evidence to require less or different proof in order to convict than what was necessary when *the crime* was committed. . . . The key inquiry is whether a retrospective law is punitive.[26]

We have already determined that the statute may apply retroactively to prior acts, even to the City's payment of compensation to Schutzman before 2013. We then settled why this law is not punitive in nature because it does not

---

[26] *Buck v. Commonwealth*, 308 S.W.3d 661, 664–65 (Ky. 2010) (emphasis added) (citing *Purvis v. Commonwealth*, 14 S.W.3d 21, 23 (Ky. 2000), and *Martin v. Chandler*, 122 S.W.3d 540, 547 (Ky. 2003)).

28

impose a punishment for committing a forbidden, unlawful, or wrongful act. The same premises apply to this analysis.

KRS 61.598 is also not unconstitutional as an ex post facto law, because, although the statute operates retroactively, the assessment is not a punishment for a criminal act. Ex post facto laws apply only to criminal or penal matters, not generally to civil or private matters.[27] This assessment is a civil assessment incurred for non-criminal actions. Again, the assessment was to redistribute actuarial costs according to statute, not to punish the City for a lawful employment decision.

The Contracts Clauses are not implicated either. The relationship between the City and the Retirement Systems is one purely of statute, not contract.[28] And the relationship between the City and Schutzman, that is, the rights and obligations owed between them, is left completely unaffected. KRS 61.598 establishes a separate financial obligation to the Retirement Systems given the City's participant status. The statute does not affect any employer-employee obligations between the City and Schutzman, especially now that the employment relationship no longer exists by virtue of Schutzman's retirement. We find no violation of the Contracts Clause, as no contractual relationship of the City's was affected.

---

[27] *Nicholson v. Jud. Ret. & Removal Comm'n*, 562 S.W.2d 306, 308 (Ky. 1978); *Henderson & N.R. Co. v. Dickerson*, 56 Ky. 173, 177 (Ky. 1856) ("It is not an ex post facto law, for such laws relate exclusively to offenses against the public, and not to private wrongs and injuries.").

[28] *See Ky. Emps. Ret. Sys. v. Seven Cnties. Servs., Inc.*, 580 S.W.3d 530, 546 (Ky. 2019).

## IV. CONCLUSION

For the reasons stated, we affirm the decision of the Court of Appeals.

Minton, C.J., Hughes, Keller, Conley, VanMeter and Lambert, JJ., sitting.

All concur. Nickell, J., not sitting.

COUNSEL FOR APPELLANT:

Mary Ann Stewart
Bryce C. Rhoades
Adams Law, PLLC

COUNSEL FOR APPELLEE:

Anne Caroline Bass
Kentucky Public Pensions Authority