RENDERED: NOVEMBER 2, 2017
TO BE PUBLISHED

Supreme Court of Kentucky FINAL

2015-SC-000680-DG

DATE 11/27/17 Kim Redman, DC

UTILITY MANAGEMENT GROUP, LLC                                    APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2013-CA-000929-MR
PIKE CIRCUIT COURT NO. 11-CI-01286

PIKE COUNTY FISCAL COURT                                          APPELLEE

**OPINION OF THE COURT BY JUSTICE HUGHES**

**AFFIRMING AND REMANDING**

Appellant Utility Management Group, LLC (UMG), a privately-owned

limited liability company, provides management and operational services to

Mountain Water District (the District), a water district created pursuant to

Kentucky Revised Statute (KRS) Chapter 74. Residents of the unincorporated

areas of Pike County pay the District for water and sewer services provided to

them through infrastructure and equipment owned by the District, and the

District in turn pays UMG a monthly fee specified in the parties' contract. A

January 2011 audit of the District by former Auditor of Public Accounts Crit

Luallen revealed that from the contract's inception in July 2005 through June

2010 the District paid UMG over $36 million. The Auditor had limited success

in obtaining business records from UMG regarding the actual costs of the

services UMG provided, so in March 2011 the Pike County Fiscal Court made

an Open Records request pursuant to KRS 61.870 and 61.872. When UMG declined to produce the requested documents on grounds it was a "wholly private entity," Pike County pursued and secured an Attorney General opinion, 11-ORD-143, finding UMG subject to the Open Records Act, KRS 61.870-.884 (the Act) and requiring production. On UMG's judicial appeal, the Circuit Court rejected the Attorney General's analysis and, having additionally found part of the statute unconstitutionally vague, concluded that UMG had no disclosure obligation under the Act. The Court of Appeals reversed, holding that UMG was subject to the Act as it existed at the time of the initial request and denial in March 2011 and further that the statute was not unconstitutionally vague. On discretionary review, we affirm the Court of Appeals' opinion remanding this matter to Pike Circuit Court for entry of an order requiring UMG to comply with the Open Records Act.

## **RELEVANT FACTS**

The District was established in 1986 through the merger of three separate water districts, and is a public utility subject to the Public Service Commission. KRS 278.015. Beginning July 3, 2005, the District's Board of Commissioners entered into a five-year contract with UMG whereby UMG would perform the operations, management and maintenance of the District for an annual fee of $6,819,000, subject to annual adjustment for an increase in customers and changes in the Consumer Price Index. In the year preceding the aforementioned Attorney General's Opinion, 11-ORD-143 (Sept. 14, 2011), the annual fee was approximately $7.6 million. Under the contract, the

2

District retained ownership of all equipment and infrastructure but transferred all of its personnel and water district responsibilities to UMG.

UMG was organized in Kentucky in August 2004 and the District was its first client. The record reflects that as of the date of this litigation (and apparently throughout its existence) UMG had only one other client, the City of Pikeville. Under an approximately $4 million annual contract with the City of Pikeville, UMG provides water and sewer services, garbage pickup, street services and parks maintenance. Although the record is less than clear, it appears that UMG has never contested that all or essentially all of its income is derived from its contracts with the District and the City of Pikeville.

An audit of the District by the Auditor of Public Accounts produced a January 27, 2011 report raising significant concerns about the District and its contract with UMG.[1] On March 4, 2011, an Assistant Pike County Attorney, on behalf of Pike County Fiscal Court, asked UMG to produce business records pertaining to the District/UMG contract from January 7, 2005 through the present. When UMG declined, Pike County sought and obtained an Attorney General Opinion.

In 11-ORD-143, the Attorney General noted that KRS 61.870(1)(h), as it then existed, defined a "public agency" subject to the Act to include "any body which derives at least twenty-five percent (25%) of its funds expended by it in the Commonwealth of Kentucky from state or local authority funds." The

_____

[1] (The report is available at http://www.auditor.ky.gov/Public/Audit Reports/Archive/2011MountainWaterDistrict.pdf.)

3

Attorney General opined that UMG met that definition because (1) its only known sources of revenue were the funds derived under its contracts with the District and the City of Pikeville; (2) the District and the City were public agencies collecting statutorily authorized fees and thus the monthly contract payments to UMG were properly characterized as "state or local authority funds;" and (3) UMG necessarily derived at least 25% (and probably all) of the funds expended by it in Kentucky from state or local authority funds.[2] The Attorney General concluded that UMG was thus required to comply with the Act and to the extent it objected to production of individual documents it was necessary to identify in writing the applicable exception under KRS 61.878(1)(a)-(n).

UMG filed a Complaint and Petition for Declaration of Rights in Pike Circuit Court on September 28, 2011. While the case was pending, the General Assembly amended KRS 61.870(1)(h), effective July 12, 2012. The new provision provides:

> Any body which, *within any fiscal year,* derives at least twenty-five percent (25%) of its funds expended by it in the Commonwealth of Kentucky from state or local authority funds. *However, any funds derived from a state or local authority in compensation for goods or services that are provided by a contract obtained through a public competitive procurement process shall not be included in the determination of whether a body is a public agency under this subsection.*

---

[2] The Attorney General did not specifically address whether UMG was a "body," but implicitly found as much.

4

If applicable, the highlighted amendment language removes UMG from the coverage of the Act because its contracts with the District and the City of Pikeville were ostensibly pursuant to a public competitive procurement process.[3] Following briefing, the Circuit Court concluded that the 2012 amendment was remedial and therefore applied retroactively. Alternatively, it held that the "body" referred to in the earlier version of KRS 61.870(1)(h) (hereafter referred to as the 1994 version) meant a "public body," not a private business entity, and in any event the statutory definition was unconstitutionally vague.

The Court of Appeals rejected all of the circuit court's conclusions. It found the 2012 amendment to be substantive and therefore not retroactive. Analyzing the 1994 version of KRS 61.870(1)(h), it concluded that considered in the context of other provisions of the Act, the word "body" necessarily included a private business entity such as UMG and, finally, that the statute was not void for vagueness.

**ANALYSIS**

**I. UMG is a "Body" Subject to the Open Records Act.**

The Open Records Act was adopted in 1976 with a preamble stating that "access to information concerning the conduct of the peoples' business is a fundamental and necessary right of every citizen in the Commonwealth of

---

[3] The Auditor's report identified several concerning irregularities in the competitive bid process with respect to the District's award of the UMG contract but given our resolution of this case we need not address further whether the UMG contract was the product of a truly public competitive procurement process.

5

Kentucky." 1976 Ky. Acts Chapter 273. The Act applies to any entity qualifying as a "public agency" under KRS 61.870(1) including state or local government officials, departments, commissions, boards and special district boards. As noted, the initial focus in this case is the 1994 version of KRS 61.870(1)(h), which refers to a "body" that derives at least 25% of the funds it expends in Kentucky from "state or local authority funds." In construing "body," the circuit court focused on the absence of any reference in the Act to companies, corporations, limited liability companies or other private business entities and the use of the word "body" in several parts of KRS 61.870 as referencing clearly governmental bodies. *See, e.g.,* KRS 61.870(1)(d) "every county and city governing body . . .;" KRS 61.870(1)(g) "any body created by state or local authority in any branch of government. . . ." That court concluded, erroneously, that construing "body" to include a "private, non-governmental business is clearly inconsistent with a plain reading of the balance of the statute."

As often stated, our primary goal in construing statutes is to give effect to the intent of the General Assembly and we derive that intent, to the extent possible, from the language the legislature chose, employing statutory definitions if they are provided and otherwise construing terms "as generally understood in the context of the matter under consideration." *Shawnee Telecom Res., Inc. v. Brown,* 354 S.W.3d 542, 551 (Ky. 2011). "We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related

6

statutes." *Id.* citing *Hall v. Hospitality Res., Inc.*, 276 S.W.3d 775 (Ky. 2008). We also presume that legislators "did not intend an absurd statute or an unconstitutional one." *Id.* If the statute is truly ambiguous or frustrates a plain reading, only then do we resort to extrinsic aids such as legislative history or the construction of similar statutes (especially model or uniform statutes) by other courts. *Id.*

There is no definition of "body"[4] in the Open Records Act but the word is illuminated by the definition of "public record" in KRS 61.870(2) which provides:

> "Public record" means all books, papers, maps, photographs, cards, tapes, discs, diskettes, recordings, software, or other documentation regardless of physical form or characteristics, which are prepared, owned, used, in the possession of or retained by a public agency. *"Public record" shall not include any records owned or maintained by or for a body referred to in subsection (1)(h) of this section that are not related to functions, activities, programs, or operations funded by state or local authority;*

(Emphasis supplied). As the Court of Appeals aptly noted, state and local governmental bodies function solely for governmental purposes so the second sentence of KRS 61.870(2) is logically unnecessary if the Act does not encompass some private entities. Stated differently, state and local governmental bodies would not maintain records that are "*not* related to functions, activities, programs or, operations funded by state or local authority." *Id.* (emphasis supplied). Similarly, it is difficult to fathom why the

---

[4] The "generally understood" meaning, *Shawnee Telecom*, 354 S.W.3d at 551, of the word "body" is discussed *infra* in the context of UMG's constitutional challenge to KRS 61.870(1)(h).

7

KRS 61.870(1)(h) reference to a body deriving at least 25% of its funds from state or local authority funds would be necessary if non-governmental entities were entirely excluded from the Act since state and local governmental entities derive all, or virtually all, of their funds from the government.

Considering the statute as a whole, we are compelled to conclude that a private entity such as UMG can indeed be a "body" as encompassed by KRS 61.870(1)(h),[5] leading to the inquiry of whether UMG derives at least 25% of its funds from "state or local authority funds." While the parties note that the 1994 version did not contain a time period for which to calculate the percentage, that timing concern is irrelevant in this case because it is undisputed that UMG derives all or virtually all of its revenues from the District and the City of Pikeville. As the Attorney General correctly observed:

> UMG has only two known sources of revenue—contracts with MWD [the District] and the City, both of which are indisputably public agencies within the meaning of KRS 61.870(1), and which are statutorily authorized to collect fees paid by consumers for the services provided. Upon receipt by each public agency, regardless of the source or purpose for which such funds are paid, those funds take on a public character and can be properly characterized as 'state or local authority funds,' a phrase which is comprehensive and includes fee revenues generated by MWD and the City. UMG is then compensated with public funds for performing certain services through, or on behalf of, MWD and the City.

---

[5] This is consistent with the Attorney General's interpretation of the term through the years. On several occasions, a private entity has been held subject to the Open Records Act. See 10-ORD-062 (Keeton Corrections, Inc.-Paducah); 04-ORD-111 (Kentucky Baptist Homes for Children, Inc.); 02-ORD-222 (Seven Counties Services, Inc.).

8

Given these undisputed facts, the monies UMG expends in its solely Kentucky-based business are necessarily "state or local authority" funds and UMG is a "body" qualifying as a "public agency" under KRS 61.870(1)(h). As a "public agency," UMG was obligated to produce "public records" pursuant to the Act, at least as it existed in 1994, upon request by the Pike County Fiscal Court. This is certainly not "an absurd result," *Shawnee Telecom*, 354 S.W.3d at 551, the construction to be avoided in statutory construction, given the wholly public nature of UMG's business activities. Of course, UMG insists the 1994 definition does not apply following the General Assembly's amendment of KRS 61.870(1)(h) so we turn next to that amendment and its effect, if any, on the issue before us.

## II. The 2012 Amendment to KRS 61.870(1(h) is not Retroactive.

In *Comm. Dept. of Agriculture v. Vinson*, 30 S.W.3d 162, 168 (Ky. 2000), this Court recognized the time-honored "fundamental principle of statutory construction in Kentucky" that bans the retroactive application of statutory amendments. "Kentucky law prohibits the amended version of a statute from being applied retroactively to events which occurred prior to the effective date of the amendment unless the amendment expressly provides for retroactive application." *Id.* As our General Assembly has pointedly stated: "No statute shall be construed to be retroactive, unless expressly so declared." KRS 446.080(3). With this directive, our Court has held there are no mandatory "magic words" for retroactive legislation but the legislature "must expressly manifest its desire that a statute apply retroactively." *Baker v. Fletcher*, 204

9

S.W.3d 589, 597 (Ky. 2006). Unquestionably, we recognize a "strong presumption" that statutes operate prospectively. *Vinson*, 30 S.W.3d at 168.

UMG seeks to override this presumption and secure the application of the 2012 amendment to KRS 61.870(1)(h) to the Pike County Fiscal Court's 2011 Open Records request on the grounds that the amendment was "remedial" and thus can be applied retroactively. In *Vinson*, 30 S.W.3d at 168, this Court noted that substantive amendments to the law, "amendments which change and redefine the out-of-court rights, obligations and duties of persons in their transactions with others" come with the rule that statutory amendments are not to be applied retroactively. So-called "remedial" amendments are not, however, covered by the presumption against retroactivity. *Id.* A remedial statute generally expands "an existing remedy without affecting the substantive basis, prerequisites, or circumstances giving rise to the remedy." *Kentucky Ins. Guar. Ass'n v. Jeffers*, 13 S.W.3d 606, 609 (Ky. 2000). As explained in *Moore v. Stills*, 307 S.W.3d 71, 81 (Ky. 2010):

> Among the "remedial" enactments are statutory amendments that clarify existing law or that codify judicial precedent. Because such amendments do not impair rights a party possessed when he or she acted or give past conduct or transactions new substantive legal consequences, they do not operate retroactively and thus do not come within the rule against retroactive legislation.

(Citations omitted).

Without a doubt, the 2012 amendment to KRS 61.870(1)(h) effected a substantive change in the law. Prior to that time, a "body" which met the 25% expenditure test was subject to the Act but after the amendment, designated

10

effective as of July 12, 2012, a body which derives its public funds from a contract issued in a public competitive procurement process is no longer covered. "Out-of-court rights, obligations and duties," *Vinson*, 30 S.W.3d at 168, are manifestly affected by such a change in the law. More precisely, UMG was plainly covered by the 1994 version of the statute but it would seemingly avoid Open Records Act obligations altogether under the 2012 version because its contract with the District (and with the City of Pikeville) was obtained following what was ostensibly "a public competitive procurement process." Stated conversely, prior to the 2012 amendment the Pike County Fiscal Court had a right to request and receive documents from UMG while post-amendment it would not.

In an effort to avoid the obviously substantive nature of the 2012 amendment, UMG argues that the 2012 amendment really did "clarify existing law." *Moore*, 307 S.W.3d at 81. UMG points to a 2009 Jefferson Circuit Court opinion regarding the perceived unconstitutionality of the 1994 version of KRS 61.870(1)(h) and a "bill summary" for the 2012 amendment that appeared on the Kentucky General Assembly's website. Neither of these extraneous matters supports the conclusion that the 2012 amendment was simply "clarifying" as to the "bodies" identified in KRS 61.870(1)(h) that are subject to public records disclosure obligations.

Beginning with the bill summary, UMG focuses on the following language regarding H.B. 496 (2012):

> Retain original provisions, except change the requirement that the company derive at least 25 percent of its funds expended by it in

11

the Commonwealth within the current fiscal year to within any fiscal year; **clarify** that the exclusion applies to funds derived from a state or local authority in compensation for goods or services provided by a contract obtained through a public competitive procurement process.

See http://www.lrc.ky.gov/record/12rs/hb496.htm (emphasis added). A review of the relevant website establishes that the "clarify" language does not refer to clarifying the existing 1994 definition. Rather, the original 2012 bill directed to the statute was followed by a House Committee Substitute (HCS) and that HCS was intended to clarify the language in the 2012 proposed amendment then under consideration. Whereas the original 2012 bill simply stated, "public procurement process" the HCS added the word "competitive." In any event, the clarification reference in the bill summary appears in the context of clarifying an exclusion ("clarify that the exclusion applies to . . .) and there were no exclusions in the 1994 version of KRS 61.870(1)(h). To the extent the bill summary is entitled to any deference, a debatable proposition, it clearly says nothing about the 2012 legislative enactment clarifying the existing 1994 statute.

As for the 2009 Jefferson Circuit Court opinion,[6] that court appropriately identified a shortcoming in the 1994 version of KRS 61.870(1)(h), *i.e.*, the absence of any timeframe for which to assess the 25% expenditure threshold. In some instances, including the case before that circuit court, the time frame for determining whether a body has the requisite level of public fund

---

[6] *Chilton v. M. A. Mortenson Co.*, Case No. 09-CI-02749 (Jefferson Circuit Court, Div. 13 Nov. 24, 2009).

12

expenditures could be determinative, *e.g.,* the 25% threshold may be met for the preceding three years but not the preceding year alone. The 2012 legislation addressed this specific concern by adding the language "within any fiscal year," leading to the logical interpretation that if the records sought are for a fiscal year in which the 25% threshold is met, there is an obligation to produce. There is no indication that this part of the 2012 amendment, which addressed an obvious omission from the original statute, was prompted by the Jefferson Circuit Court opinion but, in any event, the clarification of this one troubling timeframe issue does not convert the 2012 amendment as a whole into a remedial statute. While it is plausible to deem the "in any fiscal year" language remedial, it is not at all plausible to deem the remainder of the 2012 amendment removing certain bodies that receive public funds from the ambit of the Open Records Act remedial. That change is indisputably substantive and simply cannot be applied retroactively.

Finally, we note UMG cites authority from other jurisdictions[7] for the general proposition that until this matter is fully concluded by final opinion of this Court, the Pike County Fiscal Court's right, if any, to UMG's records has not "vested" and, accordingly, applying the 2012 amendment would not really be a retroactive application of the law. Given the language employed by our General Assembly in the Open Records Act, we find these out-of-state decisions unpersuasive. Our statute reflects that even if the requester is denied the

---

[7] *Deal v. Coleman,* 751 S.E.2d 337 (Ga. 2013); *Houston Indep. School Dist. v. Houston Chronicle Pub. Co.,* 798 S.W.2d 580 (Tex. App. 1990).

13

public records requested and has to pursue them through an appeal to the Attorney General and even all levels of the Kentucky Court of Justice, as the Pike County Fiscal Court has done in this case, the right to inspect vests at the time of the original, statutorily authorized request.

KRS 61.872(1) provides that "all public records shall be open for inspection by any person" and KRS 61.872(2) elaborates that "any person *shall have the right to inspect* public records." (emphasis supplied). The public agency that maintains the records has essentially three business days to respond. *See* KRS 61.880. If inspection is denied, there is recourse to the Office of the Attorney General pursuant to KRS 61.880 followed by a judicial remedy pursuant to KRS 61.882. In subsection (5) of the judicial appeal statute, the General Assembly provided for the recovery of costs and attorney fees by a requester who successfully pursues an Open Records Act appeal. The General Assembly further detailed that "it shall be within the discretion of the court to award the person an amount not to exceed twenty-five dollars ($25) for each day that he was denied the right to inspect or copy said public record." KRS 61.882(5). We read this to mean that the inspection right exists and fully vests when a person first seeks and is denied public records which are statutorily subject to the Open Records Act. Here, the Pike County Fiscal Court's right to the records it sought from UMG vested in March 2011, well before the 2012 amendment of KRS 61.870(1)(h).

14

## III. The 1994 Version of KRS 61.870(1)(h) Was Constitutional.

With UMG plainly subject to the Open Records Act as it existed in March 2011 and unable to avail itself of the 2012 amendment, the remaining question for our consideration is whether KRS 61.880(1)(h) in its 1994 form was constitutional. The circuit court found the statute unconstitutionally vague and unintelligible, primarily due to the lack of definitions for the term "body" and the phrase "state or local authority funds." The Court of Appeals rejected this analysis, and we do as well. Turning to the constitutionality issue, we are ever mindful of the presumption that the statutes we address are constitutional. *Curd v. Ky. State Bd. of Licensure*, 433 S.W.3d 291, 305 (Ky. 2014).

As this Court noted in *Bd. of Trustees of the Judicial Form Ret. Sys. v. Atty Gen. of Commonwealth*, 132 S.W.3d 770, 778 (Ky. 2003):

> The void-for-vagueness doctrine is most often applied in the context of the First Amendment, the criminal law, and punitive civil laws. However, while statutes affecting those areas should receive the most *rigorous* review and are most *commonly* held void for vagueness, non-punitive civil, regulatory, or spending statutes are also invalid if they are so unintelligible as to be incapable of judicial interpretation. In that circumstance, the statute often is declared void for "unintelligibility" or "uncertainty" as opposed to "vagueness."

(Citations omitted). The latter "void-as-unintelligible" doctrine is most aptly reflected in our predecessor Court's statement in *Folks v. Barren Cty.*, 232 S.W.2d 1010, 1013 (Ky. 1950): "But where the law-making body, in framing the law, has not expressed its intent intelligibly, or in language that the people upon whom it is designed to operate or whom it affects can understand, or

15

from which the courts can deduce the legislative will, the statute will be declared to be inoperative and void."

As the *Bd. of Trustees* Court explains, the constitutional foundation for the void-for-vagueness doctrine is the First Amendment for laws that constrain speech and the Due Process Clause of the Fifth and Fourteenth Amendments for criminal laws. 132 S.W.3d at 781. The constitutional basis for the void-for-unintelligibility doctrine is not found in the Bill of Rights but rather the bedrock principle of separation of powers. *Id.* at 780-81. See Ky. Const. § 27 (providing for separation of powers among executive, legislative and judicial branches of government); Ky. Const. § 28 (prohibiting any branch from exercising powers committed to the other two branches); Ky. Const. § 29 (vesting legislative power in General Assembly). Where a statute is unintelligible, the courts cannot interpret it but instead must speculate about the legislative intent: such judicial speculation is effectively unauthorized judicial legislation. 132 S.W.3d at 781. See *Sullivan v. Brawner*, 36 S.W.2d 364, 368 (Ky. 1931) (When a court is "left in the dark with no lights furnished by the statute to dissipate that darkness" it cannot engage in conjecture lest it "allocate to itself legislative functions"). In *Bd. of Trustees*, this Court appropriately noted that faced with that situation—judicial legislating due to unintelligibility—the proper course is to declare the challenged statute unconstitutional and give the General Assembly the opportunity to pass a new, intelligible statute. 132 S.W.3d at 781.

16

Turning to the 1994 version of KRS 61.870(1)(h) and recognizing that is does not involve speech or criminal law, we consider the void-as-unintelligible doctrine. The question posed is whether the people the statute affects can understand it and the courts can deduce the legislature's will. *Folks*, 232 S.W.2d at 1013. The answer is yes, most certainly.

The absence of a definition for the word "body" does not render unintelligible the phrase "any body which derives at least twenty-five percent (25%) of its funds expended by it in the Commonwealth of Kentucky from state or local authority funds." A common definition of the term "body" in the legal sense is "a group of individuals regarded as an entity; a corporation." *See American Heritage Dictionary of the English Language* (5th ed. 2011) and *Webster's II New College Dictionary* (1995). Similarly, it is common sense that funds or monies held by a state or local authority (such as funds held by the District and the City of Pikeville, both of which are public agencies within the meaning of KRS 61.870(1)(h)) constitute "state or local authority funds." The 1994 statute could have been drafted more precisely, perhaps, but that is not the test of constitutionality under the void-for-vagueness doctrine, *Commonwealth v. Kash*, 967 S.W.2d 37, 43 (Ky. App. 1997), nor should it be when the issue is whether the statute is void-as-unintelligible. If people it affects can understand it and courts such as this one can interpret it without

17

great difficulty, the statute must be deemed constitutional. KRS 61.870(1)(h) in its challenged form was and is constitutional.[8]

## CONCLUSION

At the time of Pike County Fiscal Court's 2011 Open Records Act request, UMG was a "public agency" subject to the Act pursuant to KRS 61.870(1)(h) because it was "a body which derives at least twenty-five percent (25%) of its funds expended by it in the Commonwealth of Kentucky from state or local authority funds." The 2012 amendment to KRS 61.870(1)(h) was a substantive amendment and, consequently, does not apply retroactively to relieve UMG of its disclosure obligation in response to the Pike County Fiscal Court's request. Finally, the challenged 1994 version of KRS 61.870(1)(h) was and is constitutional: it is sufficiently intelligible that people can understand it and the courts can discern legislative intent without resort to judicial speculation. Accordingly, we affirm the Court of Appeals' conclusion that UMG must respond to the Pike County Fiscal Court's March 2011 Open Records Act request, and remand this matter to Pike Circuit Court for entry of an order consistent with this Opinion.

Minton, C.J.; Keller, VanMeter, and Venters, JJ., concur. Wright, J., dissents by separate opinion in which Cunningham, J., joins.

---

[8] UMG raises in this Court, for the first time, an equal protection claim, a claim not included in its Complaint and Petition for Declaration of Rights and not addressed by either of the lower courts. As we have regularly observed, appellate courts are "without authority to review issues not raised in or decided by the trial court." *Ten Broeck DuPont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) *citing Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989). We do not address this eleventh-hour argument.

WRIGHT, J., DISSENTING: When the Pike County Fiscal Court requested records from UMG, a privately-owned, for-profit Kentucky limited liability corporation, UMG replied to the request stating that, as a private entity, it was not subject to the Open Records Act. This case turns on this Court's application of KRS 61.870(h). As that statute existed at the time of the request, it defined "public agency" to include "any body which derives at least twenty-five percent (25%) of its funds expended by it in the Commonwealth of Kentucky from state or local authority funds." Since the litigation in the present case began, the General Assembly has amended the statute. The amendment specifically excludes funds "provided by a contract obtained through a public competitive procurement process" from consideration in determining whether a body is a public agency. UMG's funds are obtained through such a competitive procurement process. Therefore, under the amendment, UMG would be excluded.

This case turns on which version of the statute applies. The majority holds the pre-amendment version applies; however, I respectfully disagree and, therefore, dissent. While the statute does not explicitly provide for its retroactive application, this Court has recognized an exception to the presumption against retroactivity. "[S]tatutory amendments that do not affect substantive rights, amendments often referred to as 'remedial,' do not come within the rule prohibiting retroactive application." *Moore v. Stills*, 307 S.W.3d 71, 80–81 (Ky. 2010) (internal citation and quotations omitted). "[S]tatutory amendments that clarify existing law" are remedial in nature because "such

19

amendments do not impair rights a party possessed when he or she acted or give past conduct or transactions new substantive legal consequences." *Id.* at 81.

Here, the General Assembly merely clarified its definition of public agency. The Legislature knew it needed to do so because of the ambiguity of the statute. In fact, Representative Johnny Bell (the amendment's primary sponsor) even said as much during committee hearings on the amendment. He stated:

> What this legislation is attempting to do is to protect private industry, private entities. What is happening is there has been, what I feel like, a misinterpretation of the original legislation. If you read that legislation, it's not very good. It's not very well written, in my opinion as an attorney. It's now been held by a Louisville judge [in *Chilton v. M.A. Mortenson Co.*, Case No. 09-CI-02749 (Jefferson Circuit Court, Div. 13 Nov. 24, 2009)] to be all overbroad and vague . . . . I would have liked to have changed a lot of it, but because of the scrutiny, I decided not to do that. So, we done a very minute change, which in essence states that someone that goes through a public, competitive procurement process, that is already open to the public wholeheartedly, anyone can see that, any competitive bid in the state is open to the public. . . . So, we felt like, due to the Louisville judge's holding and the disagreement with the interpretation that we needed to do some minute *clarification* to protect private entities.

The Legislature was looking at cases in which a large, out-of-state company with a contract for close to $250 million with the state was not considered a "public agency" (and, therefore, not subject to open records requests), while a smaller, in-state private LLC with a fraction of the revenue from local-government contracts would be subject to open up its books. This is an absurd result. But, by a simple clarification of the statutory language, the General Assembly could avoid it.

20

This clarification did not impair the rights of the Fiscal Court. Rather, it merely provided a better frame of reference to the bodies to which the legislature had always intended the statute to apply. This only makes sense. The *public* competitive procurement process is already, as its name indicates, open to the public. What the public is doing with its funds through this process is not closed in any way—and the details surrounding said process are certainly available to the public through an open records request. However, the legislature never intended the books of the private companies engaging in the public competitive procurement process to be subject to such a request. The fact that the Act never so much as mentions private companies lends credence to this assertion.

Because the Fiscal Court never had a right to these records, no rights would be impaired by the retroactive application of the amendment. Therefore, the clarification the General Assembly made to the Open Records Act was remedial in nature and should be applied retroactively.

Furthermore, regardless of whether UMG was subject to the Open Records Act, the Fiscal Court's request was overbroad. It requested "copies of [UMG's] checks and all expenses since the original contact [sic] between Mountain Water and UMG." It also sought "a list of expenditures including check number, date, amount and payee for all checks written from January 7, 2005 to present." In fact, the Fiscal Court's own attorney admitted during oral that an overbroad interpretation could be given to the request. Contrary to the request, KRS 61.870(2) plainly provides: "'Public record' shall not include any

21

records owned or maintained by or for a body referred to in subsection (1)(h) of this section that are not related to functions, activities, programs, or operations funded by state or local authority . . . ." KRS 61.870(2). Therefore, the request exceeded the parameters of the Act.

For these reasons, I respectfully dissent.

Cunningham, J., joins.

COUNSEL FOR APPELLANT:

Kevin Crosby Burke
Jamie Kristin Neal
Burke Neal PLLC


COUNSEL FOR APPELLEE:

John Doug Hays

David Seth Kaplan
Casey Leigh Hinkle
Kaplan & Partners LLP