RENDERED: DECEMBER 18, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0395-DG

NATHAN TORIAN, INDIVIDUALLY AND AS                APPELLANT
REPRESENTATIVE OF A CLASS OF
SIMILARLY SITUATED PERSONS
COMPRISING THE UNINCORPORATED
LABOR ORGANIZATION, THE
INTERNATIONAL ASSOCIATION OF FIRE
FIGHTERS, LOCAL 168

|  | ON REVIEW FROM COURT OF APPEALS |  |
|---|---|---|
| V. | NO. 2022-CA-1071 |  |
|  | MCCRACKEN CIRCUIT COURT NO. 21-CI-00490 |  |

CITY OF PADUCAH, KENTUCKY; CAROL C.           APPELLEES
GAULT, IN HER OFFICIAL CAPACITY AS
CITY COMMISSIONER; DAVID GUESS, IN
HIS OFFICIAL CAPACITY AS CITY
COMMISSIONER; RAYNARLDO
HENDERSON, IN HIS OFFICIAL CAPACITY
AS CITY COMMISSIONER; SANDRA
WILSON, IN HER OFFICIAL CAPACITY AS
CITY COMMISSIONER AND MAYOR PRO-
TEM; GEORGE P. BRAY, IN HIS OFFICIAL
CAPACITY AS MAYOR, PADUCAH, KY;
PADUCAH CITY COMMISSION; AND STEVE
KYLE, IN HIS OFFICIAL CAPACITY AS FIRE
CHIEF

**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>AFFIRMING</u>**

This case is before the Court upon discretionary review after the Court of

Appeals affirmed the McCracken Circuit Court's grant of summary judgment to

Paducah[1] which held KRS[2] 311A.027(1) did not apply to Nathan Torian, individually and as representative of a class. Upon review, we affirm albeit upon different grounds.

## I. Facts, Arguments, and Procedural Posture

KRS 311A.027(1) states "No public agency, tax district, or other publicly funded emergency medical service first response provider or licensed ambulance service shall have a residence requirement for an employee of or volunteer for the organization." Paducah's Ordinance § 2-304 states, "All members of the fire department hired after October 1, 1998, shall reside within McCracken County or within forty-five minutes of Station 4 as measured by a recognized mapping program . . . as a condition of their continued employment with the fire department of the city." Nathan Torian, a fire fighter in Paducah, filed a Declaration of Rights and requested an injunction barring Paducah from enforcing this ordinance. Torian argues he and the class he represents are "emergency medical service first response providers" within the ambit of KRS 311A.027(1). Accordingly, Paducah cannot impose a residency requirement upon them and the ordinance is void as preempted by the statute.

The major premise of Torian's argument is that KRS 311A.027(1) applies to emergency medical service first response providers; the minor premise is that Paducah's fire fighters are required to be certified as "Emergency Medical Service Personnel" by the Kentucky Board of Emergency Medical Services

---

[1] We refer to the Appellees collectively as Paducah for ease of reference.

[2] Kentucky Revised Statutes.

(KBEMS) pursuant to KRS 311A.010(13)(a);[3] *ergo*, the conclusion, the fire fighters are emergency medical service first response providers. In response, Paducah argues the statute focuses on the status of the employer, not the employees. Paducah asserts its fire department is not an emergency medical services first response provider but is, quite simply, a firefighting department. Paducah points to the existence of KRS Chapter 95, which pertains exclusively to police and fire departments, to support its belief that fire departments are distinct from emergency medical service first response providers. To the extent the fire department's employees provide emergency medical services, Paducah argues these services are ancillary.

The trial court found,

> If Paducah firefighters were emergency medical service first responders only, or even if their *primary* duty were medical service first response providers, Torian's argument may have merit. However, firefighters are firefighters first and emergency medical responders second. KRS 311A.027 was not intended to apply to firefighters. Firefighters' duties are governed by KRS Chapter 95 which was does not preclude ordinances establishing residence requirements for firefighters. If the legislature had intended for this section to apply to firefighters it would have used the term "firefighter" in the body of the subsection and would not have placed the statute in a chapter dealing exclusively with emergency medical services.

On appeal, the Court of Appeals affirmed the trial court without substantially adding to the analysis. Before this Court, Torian maintains his same arguments made below as well as arguing the lower courts have inserted

---

[3] This provision reading, "Persons trained to provide emergency medical services and certified or licensed by the board under this chapter as an AEMT, APP, EMR, EMR instructor, EMT, EMT instructor, paramedic, or paramedic instructor[.]"

3

language into the statute, as KRS 311A.027(1) makes no distinction between "primary" or "secondary" emergency medical service first response providers.

## II. Standard of Review

> The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."

*Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (quoting CR[4] 56.03). "When a motion for summary judgment at the trial court, and on appeal, presents only a question of law, we review *de novo* and give no deference to the lower courts." *Motorists Mut. Ins. Co. v. First Specialty Ins. Corp.*, 706 S.W.3d 120, 124 (Ky. 2024).

The only dispute here is over the interpretation of a statute which is also reviewed *de novo*.

> As often stated, our primary goal in construing statutes is to give effect to the intent of the General Assembly and we derive that intent, to the extent possible, from the language the legislature chose, employing statutory definitions if they are provided and otherwise construing terms "as generally understood in the context of the matter under consideration."

*Util. Mgmt. Grp., LLC v. Pike Cty. Fiscal Court*, 531 S.W.3d 3, 8 (Ky. 2017) (quoting *Shawnee Telecom Res., Inc. v. Brown,* 354 S.W.3d 542, 551 (Ky. 2011)). Though the words of a statute on its face may admit a clear meaning, it is possible for a latent ambiguity to arise when the statute is applied to particular facts. *Whitley Whiz, Inc. v. Whitley Cty.*, 812 S.W.2d 149, 150-51 (Ky.

---

[4] Kentucky Civil Rules of Procedure.

1991). "In such a situation, 'we must consider all of the relevant accompanying facts, circumstances, and laws, including time-honored canons of construction[.]'" *Erie Ins. Exch. v. Johnson*, 713 S.W.3d 149, 156 (Ky. 2025) (quoting *Fox v. Grayson*, 317 S.W.3d 1, 8 (Ky. 2010)). Nonetheless, "[e]xtrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). "[T]he first rule of statutory interpretation is that the text of the statute is supreme." *Owen v. Univ. of Ky.*, 486 S.W.3d 266, 270 (Ky. 2016).

### III. Analysis

We agree with Paducah the statute concerns the status of employers, not employees. The language of KRS 311A.027(1) referring to "public agency, tax district, or other publicly funded emergency medical service first response provider or licensed ambulance service[,]" refers to institutions, not individuals. This is demonstrated by the indubitable fact that Torian is not a public agency, tax district, or licensed ambulance service unto himself. Accordingly, he cannot be an "emergency medical service first response provider." Secondly, by reference to the applicable regulations, we conclude Paducah Fire Department as an institution is not covered by KRS 311A.027(1).

### A. The Meaning of KRS 311A.027(1)

The General Assembly has not done us any favors by failing to give a precise definition of "emergency medical service first response provider." The first issue is what precisely is meant by "provider"—a person or an institution?

5

The General Assembly has compounded the problem by defining "ambulance service" and "ambulance provider" as

> any individual or private or public organization, except the United States government, who is licensed by the board to provide medical services that may include transport at either basic life support level or advanced life support level and who may have a vehicle or vehicles, including ground vehicles, helicopters, or fixed-wing aircraft, to provide such transportation[.]

KRS 311A.010(4). Because an "ambulance provider" includes individuals, it can be argued "other emergency medical service first response providers" also includes individuals. On its face, however, such reasoning is tenuous as we fail to see how an individual person can also constitute a public agency or a tax district.

KRS 311A.080(1) states, "No person as defined in KRS 446.010 who is not licensed to do so, or whose license to do so has been suspended, revoked, or denied, shall operate an ambulance service or advanced life support emergency medical first response program." KRS 446.010(33) defines "person" as "bodies-politic and corporate, societies, communities, the public generally, individuals, partnerships, joint stock companies, and limited liability companies[.]" Thus, we conclude the "individual" referenced in KRS 311A.010(4) is a person in their corporate capacity as the owner, operator, or manager of an ambulance service or ambulance provider. This is supported by the fact that KRS 311A.010(13)(a) does not include "ambulance provider" under the definition of "emergency medical services personnel."

Similarly, the General Assembly has also used the phrase "One (1) licensed or certified emergency medical services field provider" in reference to

6

an individual. KRS 311A.015(2)(g) and (h). These provisions require the KBEMS have a representative of the Kentucky Professional Fire Fighters and the Kentucky Association of Fire Chiefs, respectively, on the Board. "Although we generally presume that identical words used in different parts of the same act are intended to have the same meaning, the presumption is not rigid, and the meaning of the same words well may vary to meet the purposes of the law." *Woods v. Commonwealth,* 142 S.W.3d 24, 41 (Ky. 2004) (quoting *United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, 213 (2001)). The use of the term "provider" in KRS 311A.015(2)(g) and (h) refers to individuals because it refers to who has a seat on KBEMS. The phrasing "or other publicly funded emergency medical service first response provider" in KRS 311A.027(1), however, can only be understood in the context of what preceded it, i.e., "public agency" and "tax district." These terms do not refer to individuals.

What "public agency" means is subject to various and sundry technicalities depending on the applicable legislation; attempting to borrow from one to the other is hazardous. *See e.g.,* KRS 61.805(2); *cf.* KRS 61.870(1). We reject Torian's argument to incorporate the definition of public agency under the Open Records Act for no other reason than a "public agency" under that Act is quite expansive and includes any number of entities that have no relation whatsoever to emergency medical services. The General Assembly quite obviously did not intend local libraries or parks departments, etc., to be included in KRS 311A.027(1). We, therefore, conclude a "public agency" under

7

KRS 311A.027(1) must be a public agency with a purpose of providing emergency medical services.

We need not resort to definitions and usages from other statutes if the words are capable of being understood in their own context. *Util. Mgmt. Grp.*, 531 S.W.3d at 8. Nonetheless, statutes defining "public agency" routinely include local governments in that definition.[5] Additionally, the text of KRS 311A.027(1) refers to "public agencies" empowered to impose conditions on employment. Therefore, "public agency" is a local government or department of government that provides emergency medical services.

That KRS 311A.027(1) goes on to refer to "*or other publicly funded emergency medical service first response provider[s]*" further supports our conclusion. (Emphasis added). The words "or other" are nuanced. "Other" operates according to its standard definition of "additional or further" in reference to other nouns. I The American College Encyclopedic Dictionary *Other* 858 (Spencer Press, 1958). According to the last-antecedent canon, however, it is disjunctive by the limiting clause "publicly funded." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 144-46 (2012); *see also Barnhart v. Thomas*, 540 U.S. 20, 26-28 (2003). "Emergency medical service first response provider" is a noun which informs and is informed by our understanding of what the "other" nouns, i.e., "public agency" in KRS 311A.027(1) are. The "publicly funded" language then serves to exempt

---

[5] A non-exhaustive list includes KRS 61.805(2)(a); KRS 61.870(1)(b); KRS 45A.487(1) (adopting KRS 61.870's definition); KRS 186.760(8) (same); KRS 171.410(4); KRS 7.107(1); KRS 65.230(3)(a); and KRS 311.720(15).

privately owned and operated emergency medical service first response providers or ambulance services from its ambit.

### B. Resolving the Latent Ambiguity

This brings us to the crux of the case by settling what an "emergency medical service first response provider" is. Torian's first argument, which we have rejected above, is that he individually qualifies as such. Secondly, he argues Paducah Fire Department institutionally is a publicly funded emergency medical service first response provider. At first blush, this term would seem to encompass fire departments since they respond to emergencies; are first responders; and firefighters do, or at least are trained to, provide medical service when called. Reference to the regulations, however, demonstrates that emergency medical first response services are exclusively understood in the context of ambulance services. Since Paducah Fire Department does not provide ambulance services it is not covered by KRS 311A.027(1).

KBEMS has promulgated a regulation, 202 KAR[6] 7:501, pertaining to ambulance licensure that explicitly relates to "ambulance providers and medical first response agencies." This regulation delineates the requirements necessary to become and to maintain status as an ambulance provider or medical first response agency. Given our interpretation above, that "provider" in KRS 311A.027(1) refers to employers and institutions, it is synonymous with the word "agencies" in the applicable regulations. There is no substantial

---

[6] Kentucky Administrative Regulations.

9

difference in meaning between an "emergency medical service first response provider" and "medical first response agencies." Several other regulations consistently refer to "ambulance providers and medical first response agencies" together: such as delineating license classifications, 202 KAR 7:545; equipment and vehicle standards, 202 KAR 7:550; regulating ground agencies, 202 KAR 7:555; ground vehicle staff, 202 KAR 7:560; clinical pilot programs, 202 KAR 7:565; and fee schedules, 202 KAR 7:575(1).

This treatment of the two together in a comprehensive regulatory scheme demands they be treated as closely akin, if not exactly the same, and that is supported by the text of KRS 311A.027(1).[7] Whatever the exact definition of "emergency medical service first response provider" is, based on the regulations we believe it means at minimum an entity that maintains an ambulance and provides ambulance services. Medical first response agencies are subject to the same regulations and oversight as ambulance providers and ambulance services. It is absurd to subject both to the same regulations if medical first response agencies do not provide ambulance services. There is nothing in this record demonstrating Paducah Fire Department is subject to these regulations. The Paducah Fire Department does not maintain an ambulance and it does not

---

[7] The precise difference between the two, as it appears to us, is on the institution providing the service. An "ambulance provider" is a public agency or private company that solely operates and maintains ambulances for public use. A "medical first response agency" is an entity, public or private, that provides ambulances services but also has additional functions as well, e.g., hospitals.

10

provide ambulance services.[8] It is not a "medical first response agency" under the regulations, therefore, we conclude it is not an "emergency medical first response provider" under KRS 311A.027(1) since the two phrases are functionally equivalent.

Finally, we believe the existence of so-called "fire-based emergency medical service providers" supports the conclusion that there is a distinction between fire departments *simpliciter* and emergency medical service first response providers. This term was used during oral arguments but there is no such thing as "fire-based EMS" or "fire-based ambulance service" in either KRS Chapter 311A or in 202 KAR Chapter 7. The *amicus* brief filed by Kentucky Professional Firefighters Association has also pointed out that several cities and counties maintain departments which combine both fire response and emergency medical services, such Winchester Fire and EMS, and Frankfort Fire and EMS.[9] Presumably it is these kinds of combined service departments that the parties were referring to by the term "fire-based EMS." Because any department which maintains an ambulance and provides ambulance services is subject to the applicable regulations, they are distinct from those fire departments which do not. We, therefore, do not think affirming the Court of

---

[8] Paducah represented both in briefing and at oral argument that Paducah Fire Department does not operate an ambulance service. The only ambulance service in Paducah is a private company operated by the local hospitals. Torian has not denied this assertion nor produced evidence to the contrary.

[9] See also Kentucky Board of Emergency Medical Services Agencies Directory (08/01/2025), https://kbems.ky.gov/Legal/Documents/EMS_Agencies_2025-08-01.PDF.

11

Appeals is quite as broad as *amici* believes. In plain terms, this decision does not answer the question of whether combined service departments that function as both fire departments and EMS providers are subject to KRS 311A.027(1).

We will not engage in *dicta* to provide a clue as to how that question should be resolved. It exceeds the authority of this Court to fill gaps in the applicable legislation or regulations. *Ky. State Bd. of Elections v. Faulkner*, 591 S.W.3d 398, 410 (Ky. 2019). "Shaping public policy is the exclusive domain of the General Assembly." *Caneyville Volunteer Fire Dep't v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 807 (Ky. 2009).

Nonetheless, the fact that there exists in this Commonwealth departments that combine both firefighting and emergency medical services, yet such combined departments are undefined in statutory or regulatory law, leaves them in a precarious state. We call upon the General Assembly to bring clarity to this situation; if not for the sake of the judiciary, then at least for the sake of the thousands of fire fighters in the Commonwealth who serve our communities. These men and women richly deserve, at the very least, to know with certainty which statutes govern them. The General Assembly is quite capable of providing that certainty.

## IV.    Conclusion

For the aforementioned reasons, we conclude Paducah Fire Department is not an emergency medical service first response provider. Accordingly, KRS 311A.027(1) does not apply and Paducah's ordinance, § 2-304, is not

12

preempted. This moots all other questions presented by this appeal, and we do not address them. The Court of Appeals is affirmed.

Lambert, C.J.; Bisig, Conley, Keller, Nickell, and Thompson, JJ., sitting. Lambert, C.J.; Bisig, Nickell, and Thompson, JJ., concur. Keller, J., dissents with separate opinion. Goodwine, J., not sitting.

KELLER, J., DISSENTING: Respectfully, I dissent. The Court construes KRS 311A.027 so narrowly that it nullifies its plain text and its legislative purpose. Venturing beyond the plain words chosen by the General Assembly, the majority engages in an unnecessary exercise of definitional reconstruction. Having declared a "latent ambiguity" where none exists, the majority proceeds to define, redefine, and qualify statutory terms until the General Assembly's unambiguous command is rendered unrecognizable.

## I. The Statute and Its Plain Meaning

Statutory interpretation begins with the words chosen by the legislature—and when those words are clear, it ends there. The plain meaning of the statutory language is presumed to be what the legislature intended. *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005). "[I]f the words are not ambiguous, no statutory construction is required." *Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky. 2002). The statute's directive is straightforward. *McCracken Cnty. Fiscal Court v. Graves*, 885 S.W.2d 307, 309 (Ky. 1994) (where words are clear and unambiguous "there is no room for construction"). The General Assembly employed ordinary language that requires no judicial embroidery to be understood. KRS 446.080(4)

13

(ordinary/common usage governs). Courts are "not at liberty to add or subtract from the legislative enactment or discover meaning not reasonably ascertainable from the language used." *Commonwealth v. Harrelson*, 14 S.W.3d 541, 546 (Ky. 2000). "An unambiguous statute is to be applied without resort to any outside aids." *Delta Air Lines, Inc. v. Com., Revenue Cabinet*, 689 S.W.2d 14, 19 (Ky. 1985) (citing *Gateway Const. Co. v. Wallbaum, Ky.*, 356 S.W.2d 247 (Ky. 1962)). "[W]e do not resort to canons of interpretation if the meaning of the law is clear." *Fox v. Grayson*, 317 S.W.3d 1, 8-9 (Ky. 2010). "Because courts 'are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used,' we are bound by the clear language in the statute." *Merritt v. Catholic Health Initiatives, Inc.*, 612 S.W.3d 822, 829 (Ky. 2020) (citing *Dept. of Revenue, Fin. & Admin. Cabinet v. Wyrick*, 323 S.W.3d 710, 713 (Ky. 2010). The text speaks with clarity; therefore, the task before us is one of *application*, not *construction*.

In 1998, the City of Paducah adopted Ordinance § 2-304,[10] imposing a residency condition on new firefighters and requiring Kentucky Board of Emergency Medical Services (KBEMS) certification.[11] Paducah does not

---

[10] Paducah Ord. § 2-304 (Oct. 1, 1998) ("All members of the fire department hired after October 1, 1998, shall reside within McCracken County or within forty-five (45) minutes of Station 4 as measured by a recognized mapping program, i.e. MapQuest, Google Maps, etc., as a condition of their continued employment within he Fire Department of the City.").

[11] Paducah Ord. § 2-315(a) Firefighter training and qualifications; appointee probationary period. *EMT certification.* Any person employed on a permanent basis as a firefighter in the Paducah Fire Department shall, within a period of twenty-four (24) months, complete the required course and become certified as an Emergency Medical Technician (EMT) through the Commonwealth Department of Human Resources.

maintain its own ambulance service. It requires its fire department to be medically certified. When a call comes in, emergency services, including firefighters and police, are dispatched and, if ambulance services are required, they are called. There are five (5) fire stations versus one (1) private ambulance station in Paducah. When a citizen of Paducah calls 911 for a non-fire related *medical* emergency, a firefighter responds and arrives, often before the private ambulance service. The firefighters administer medical aid, as they are trained to do. In essence, this makes them emergency medical service first response providers. The firefighters respond to **emergencies**, often before anyone (**first response**), and they **provide medical services** as they were *required* to be trained to do. Paducah firefighters fully qualify as emergency medical first responders under the plain language of the law. By both ordinance and function, Paducah's fire department is a publicly funded emergency medical service first-response provider, its members trained, certified, and dispatched as initial medical responders.

KRS 311A.027(1) provides: "No public agency, tax district, or other publicly funded emergency medical service first response provider **or** licensed ambulance service shall have a residence requirement for an employee of or volunteer for the organization." (Emphasis added). The legislature's phrasing is neither obscure nor complex. By its ordinary meaning, the statute prohibits

---

Further, all firefighters so employed shall keep their EMT certification current at all times and participate in continuing EMT education and training programs. Failure to maintain EMT certification, with absence of good cause, shall be grounds for discipline or dismissal pursuant to KRS 95.450.

15

government agencies, geographical areas that levy taxes, tax-funded providers of emergency medical services, and licensed versus unlicensed ambulance services from having a restriction on a person's domicile whether they are paid or freely giving of their time. Reading KRS 311A.027(1) as a whole, in harmony with other companion provisions, reveals a consistent legislative intent – one that is undermined, not illuminated, by the majority's re-drafting of a statute plainly understood on its own.

The statute uses the disjunctive "or"— creating two separate and independent categories of covered entities: (1) publicly funded emergency-medical-service first-response providers; and (2) licensed ambulance services. The statute thus prohibits any publicly funded EMS first-response provider, regardless of whether it also operates transport vehicles, from imposing a residency requirement. The inclusion of the disjunctive "or" forecloses the majority's contraction of the statute to licensed ambulance services alone. Courts are not at liberty to convert "or" to "and." *Harrelson*, 14 S.W.3d at 546 ("Where a statute is intelligible on its face, the courts are not at liberty to supply words or insert something or make additions which amount, as sometimes stated, to providing for a *casus omissus*, or cure an omission.").

The Court of Appeals' application of the "primary purpose" test misapprehends both statutory text and functional reality. While the Court of Appeals concluded that the firefighters' *primary purpose* as fire suppression personnel excluded them from statutory protections intended for medical first responders, such a categorical approach elevates job title over duty. Because

16

the City requires KBEMS certification, dispatches firefighters as first on scene for medical emergencies, and insures them accordingly, their *primary purpose* in context is not singularly defined by fire suppression but by integrated emergency response—precisely the role the legislature sought to protect under KRS Chapter 311A. The narrow characterization substitutes organizational identity for statutory text, disregarding the integrated emergency-response reality recognized by the statute and the City's own practices.

## II. The Threshold Inquiry Requires Ambiguity

Kentucky law and standard interpretive procedure require a threshold finding of ambiguity before departing from plain meaning. As this Court reaffirmed in *Normandy Farm, LLC v. Kenneth McPeek Racing Stable, Inc.*, when the statutory language admits only one reasonable meaning, judicial pursuit or creation of ambiguity is not analysis but error. 701 S.W.3d 129, 139 (Ky. 2024) (citing *Milner v. Dept. of Navy*, 562 U.S. 562, 574 (2011). The term "publicly funded emergency medical service first-response provider" is self-defining. "The clearest expression of purpose is the language of the statute itself." *McPeek,* 701 S.W.3d at 137-38 (citing *Bell v. Bell*, 423 S.W.3d 219, 223 (Ky. 2014)). "[W]e interpret statutes based on their words then determine whether the statute applies to the facts." *McPeek,* 701 S.W.3d at 141.

KRS Chapter 311A defines "emergency medical services" broadly, encompassing both licensed ambulance services and medical first-response providers. *See* KRS 311A.010(9), (13) (services provided as an AEMT, APP, EMR, EMR instructor, EMT, EMT instructor, paramedic, or paramedic

17

instructor, as well as directors, whether paid or volunteer); KRS 311A.130; KRS 311A.190. Other provisions—such as KRS 311A.130 (training) and 311A.190 (data collection)— also refer to 'medical first-response providers' as distinct from ambulance services. The broader statutory context reinforces this plain reading. Under KRS 446.080(1), "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature." That mandate does not authorize courts to rewrite clear text; rather it requires we apply the statute in a manner faithful to its evident purpose. The General Assembly knows how to qualify or limit its directives when it intends to do so, and its omission here must be read as intentional. The majority's decision to reach beyond that clarity in search of latent uncertainty inverts our interpretive duty, transforming legislative precision into judicial invention.

In *McPeek*, this Court emphasized that headings and statutory placement are not dispositive, and that clear text must be taken on its face. 701 S.W.3d. at 137–38 (reaffirming that captions and placement cannot override clear statutory text). The clear text ends the inquiry.

Paducah cannot have it both ways. Paducah mandates that its firefighters maintain KBEMS medical responder certification precisely because they are the first to arrive at medical 911 scenes. This operational reality places the department squarely within the statute's definition. It calls them "first responders" for training, insurance, and dispatch purposes, yet denies them that same status when the legislature extends statutory protection. The

18

statute's disjunctive phrasing defeats that maneuver. A department can be a publicly funded EMS first-response provider without being a licensed ambulance service. To hold otherwise is to transform "or" into "and," something we are not at liberty to do. Further, it makes surplusage of half the statute and contradicts the legislature's evident intent to encompass all publicly funded EMS first-response entities.

The legislature saw that residency requirements for EMS personnel/volunteers might create an impediment to recruitment/retention (especially in rural areas). They sought to shift the regulatory focus to response-time requirements rather than residence location. They accepted that public agencies could still set "must respond within X minutes" rules but could not force a person to live within certain boundaries as a condition of service. This clear, express delineation of regulations, well within the legislative slate of responsibilities, must be respected.

### III. A Far-Reaching Interpretive Analysis

Our role is not to improve upon the legislature's drafting but to honor it. Fidelity to statutory language is the highest form of judicial restraint. Judicial interpretation must not begin with a preferred end in mind. The decision to mine for ambiguity where none exists erodes the stability of statutory interpretation, inviting uncertainty where the General Assembly has spoken with precision. Because the statute's meaning is evident through its plain terms and legislative context, I would apply it as written and end the inquiry there.

Under the interpretive hierarchy described by the Congressional Research Service[12] and echoed in *City of Fort Wright v. Bd. of Tr's. of Ky. Ret. Sys.*, the judiciary may look beyond the text only after intrinsic tools fail to produce a single reasonable meaning. 635 S.W.3d 37, 45 (Ky. 2021). Those intrinsic tools—ordinary meaning, statutory context, and semantic canons—also resolve this case conclusively. Resort to policy preference is both unnecessary and impermissible.

The statute's own structure confirms its self-containment and flexibility. Subsection (2) expressly allows an employer to have "a *requirement for response to a specified location within a specified time limit* for an employee or volunteer who is <u>off duty but on call</u>." KRS 311A.027(2) (emphasis added). The legislature thus anticipated operational needs while maintaining a bright-line prohibition on residency mandates. The City may set response-time requirements for employees that are on call consistent with subsection (2); it may not condition employment on residence.

Recognizing firefighters as covered under KRS 311A.027 does not collapse Chapter 95 into Chapter 311A; it merely applies the statute's words to their real-world referents. Function, not label, governs statutory application. The majority's contrary holding invites municipalities to avoid state-law protections by relabeling employees—a result inconsistent with legislative supremacy and sound governance.

---

[12] See Valerie C. Brannon, *Statutory Interpretation: Theories, Tools, and Trends*, Cong. Rsch. Serv., R45153 (Mar. 10, 2023) (summarizing the five principal interpretive tools used by courts).

Even assuming ambiguity, the canons of construction compel the same outcome. The disjunctive "or" requires each term to carry independent meaning. The canon of avoidance of surplusage requires every word be given effect. Protecting first responders from residency constraints while preserving emergency-readiness standards is consistent with the legislative intent to have medically trained personnel throughout the Commonwealth. Our interpretive task is not to improve the legislature's drafting but to honor it. Because KRS 311A.027 means exactly what it says—that is enough.

### IV. Conclusion

With due respect to my colleagues, I cannot join an opinion that departs from the statute's plain command. The judiciary's strength lies not in its power to reinterpret, but in its discipline to refrain. This clarity safeguards both consistency in the law and confidence in its administration. If citizens in Paducah call for a medical, non-fire emergency, a firefighter will respond and administer medical aid if they arrive before ambulance. Since the City of Paducah Fire Department is a publicly funded emergency-medical-service first-response provider within the meaning of KRS 311A.027(1), the residency ordinance directly conflicts with state law. Where there is clarity, it has been replaced with confusion. I would, therefore, reverse and remand with directions to enter declaratory and injunctive relief prohibiting enforcement of the residency requirement.

COUNSEL FOR APPELLANT:

Peter J. Jannace
David O. Suetholz
Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC


COUNSEL FOR APPELLEES:

Stacey A. Blankenship
Kristen N. Krueger
Keuler, Kelly, Hutchins,
Blankenship & Sigler, LLP

COUNSEL FOR AMICUS CURIAE,
KENTUCKY PROFESSIONAL FIRE FIGHTERS:

Benjamin S. Basil
Schulz Messex Dermody, PLLC